IRA A. BRUCE AND CLINTON S. FLETCHER, Appellants, v. ELBRIDGE D. PATTERSON, MARY M. PATTERSON, THE LEWIS INVESTMENT COMPANY, and THE BANKERS' LIFE ASSOCIATION.

**Evidence:** LEGITIMACY. A finding that a specified person is illegitimate is sustained by evidence that his mother's husband was absent from the state for nearly two years until about three months before his birth, during which absence the mother was living in open adulterous relations with another person and had a bad reputation for chastity.

*Same.* If a delay of eight years in asserting claim to the land of a decedent, knowing that others are dealing with the land as their own, and that his heirship is questioned, is not sufficient to establish that the claimant is illegitimate, it is, at least, entitled to weight in determining whether he is legitimate.

*Appeal from Cass District Court.*—HON. N. W. MACY, Judge.

FRIDAY, MAY 14, 1897.

SUIT in equity to partition certain real estate theretofore owned by Harrison Bruce, deceased. The plaintiffs each claim to own an undivided one-sixth

of a part of the property, and an undivided third of the remainder, by inheritance from the said Harrison Bruce. Defendants deny the plaintiff's title, plead title in themselves, the statute of limitations, laches, and certain other defenses, which it will not be necessary to notice. The lower court dismissed the plaintiff's petition, and they appeal.—*Affirmed.*

*Willard & Willard* for appellants.

*Curtis & Follett* and *Lewis & Royal* for appellees.

DEEMER, J.—Harrison Bruce died seized of the property in dispute on the twenty-seventh day of April, 1882. He left surviving him his widow, Mary Bruce; Samuel Bruce, a son by a former marriage; and, as appellants claim, Ira A. Bruce, the issue of that second marriage. Shortly after the death of Bruce, Samuel quitclaimed all his interest in the real estate to Mary Bruce, and on May 6, 1886, Mary Bruce conveyed the land by warranty deed to one Mary Shirrey. Shirrey held the title until the year 1888, when she in turn conveyed the same to Elbridge D. Patterson, who has ever since used and occupied the property. Patterson and wife mortgaged the premises to the Lewis Investment Company. This company assigned the said mortgage to the Bankers Life Association. In 1894, Ira A. Bruce, one of the plaintiffs, sold and conveyed to his co-plaintiff an undivided one-half interest in and to the estate of Harrison Bruce; and on the nineteenth day of January of that year, appellants commenced their suit for partition, claiming that Ira A. Bruce was and is an heir of the said Harrison Bruce, and as such is entitled to a share of his estate. The defendants deny the heirship of Ira A. Bruce, plead the statute of limitations, and an estoppel. That Ira A. Bruce is a son of Mary Bruce is conceded, but his

legitimacy is denied by the appellees. The rule of law in such matter is well understood, and, except in its application, is not the subject of controversy between the parties to this litigation. This rule, as stated in the case of *State v. Lavin*, 80 Iowa, 555 (46 N. W. Rep. 553), is as follows: "When a child is born in wedlock, the law presumes it to be legitimate, and unless born under such circumstances as to show that the husband could not have begotten it, this presumption is conclusive; but the presumption may be rebutted by facts and circumstances which show that the husband could not have been the father,—as that he was impotent, or could not have had access to his wife." The proof of non-access, however, must be clear and conclusive. Appellees contend that Harrison Bruce did not have access to his wife at or near the time the child was conceived, and that Ira A. Bruce is a bastard. It is claimed that Ira A. Bruce was born on the thirteenth day of April, 1864, and appellees introduced evidence to show that for two or more years prior to his birth Harrison Bruce was in the mountains of the west; and that his wife was in Iowa, living in adulterous relations with one Currier, to whom she was ostensibly married in October of the year 1862. It would serve no good purpose to set out the evidence in detail, and we content ourselves by stating the ultimate conclusions arrived at, bearing in mind that the evidence to overcome the presumption of legitimacy must be clear, satisfactory, and conclusive. We are fully convinced that Harrison Bruce was absent from the state at the time the child was conceived, and that he remained in the west until about three months before Ira Bruce was born. During his absence his wife was living in open adulterous relations with one Joe Currier, and had a very bad reputation for chastity. We are content to believe that the

child is the issue of these unlawful relations. Harrison Bruce, during his lifetime, frequently declared that the child was not his; and while the mother, on this trial, testified that Harrison Bruce was the father of Ira, she is so far impeached by contradictory statements that little dependence can be put upon her evidence. Ira Bruce knew as early as the year 1886 that Mary Bruce, his mother, was dealing with the property as if she was the sole owner thereof; knew that she was conveying and mortgaging it as her own, after she obtained the deed from Samuel; and that his heirship was questioned, if not denied; and yet he took no steps in assertion of his claim until January of the year 1894. At that time the title had passed from Mary Bruce to Mary Shirrey, and from Shirrey to one of the appellees. It had been mortgaged to various persons, and the appellee, the Bankers Life Association, held an unsatisfied mortgage thereon at the time this suit was instituted. While it may be that this does not constitute such laches as to bar appellants of their right to recover (a point we do not decide), yet these circumstances cast a cloud upon appellants' claim, and should be given due weight in arriving at the truth of their contention. If Ira Bruce had the interest he now claims, it is not likely that he would have delayed pressing the matter for more than eleven years after his father's death. And it is altogether improbable that he would have deferred his suit after he knew that the land had passed from his mother into the hands of a stranger, had he believed in good faith that he was entitled to a share of the estate, as well as to a part of the rents and profits. His delay certainly excites suspicion, and this suspicion is confirmed by quite satisfactory evidence that he is not the son of Harrison Bruce. The decree of the district court is AFFIRMED.