No. 31,684

The State of Kansas, *Appellee*, v. Carlos Hutchinson, *Appellant*.

(31 P. 2d 54.)

Opinion filed April 7, 1934.

*J. W. Dalton,* of Sedan, and *L. D. Akin,* of Shawnee, Okla., for the appellant.

*Roland Boynton,* attorney-general, *E. E. Steerman,* assistant attorney-general, and *A. B. Ross,* county attorney, for the appellee; *R. O. Robins,* of Sedan, of counsel.

The opinion of the court was delivered by

Johnston, C. J.: Carlos Hutchinson was charged with and convicted of the offense of procuring Mrs. Stotts to go from one place to another within the state of Kansas, for the purpose of concubinage and fornication in violation of a law of Kansas, which provides:

"Any person who shall knowingly persuade, induce, entice or procure, or assist in persuading, inducing, enticing or procuring any female person, for the purpose of prostitution, fornication or concubinage to enter or remain in any house of prostitution, or any place where prostitution, fornication, or concubinage is practiced, permitted or allowed, or who shall, by any means whatever, detain any female person, for the purpose of prostitution, fornication or concubinage in any such house or place, or who shall persuade, induce, entice or procure, or assist in persuading, inducing, enticing or procuring any female person for the purpose of prostitution, fornication or concubinage, to leave the state or to go from one place to another within this state, for the purpose of prostitution, fornication or concubinage, shall be deemed guilty of a felony, and on conviction thereof shall be punished by confinement in the state penitentiary at hard labor for not less than one year, nor more than five years: *Provided,* No conviction shall be had on the uncorroborated testimony of the woman." (R. S. 21-937.)

The case was tried with a jury which returned a verdict of guilty, and judgment was accordingly entered, and defendant appeals.

The principal contention is that the evidence was wholly insuf-

ficient to establish the conviction. Defendant, it appears, was married, and he and his wife had had trouble about his relations with Mrs. Stotts. He owned a farm near Hewins, which had been rented to one Spencer. On the farm were two residences. The larger one was occupied by the Spencer family and the smaller one was then unoccupied. Mrs. Stotts resided in Elgin, and she had been taken to a dance in Elgin by the defendant. They attended, dancing occasionally, and part of the time it was noted by witnesses that they occasionally, as others did, went out and sat in a car. The witnesses for the state who noted their conduct at the dance stated that they saw nothing improper in their conduct. One witness said that when they were in the car she saw them when Mrs. Stotts appeared to have her arms around or partly around the defendant, but detectives who had been brought there for the purpose of watching their conduct saw nothing approaching impropriety in it. When the dance ended, defendant and Mrs. Stotts drove away and went to the farm twelve miles distant where they entered the unoccupied house, and apparently stayed there for the night. They were seen to have turned on the light when they entered the house and about ten minutes later the light was extinguished. They were in and about the house the next morning and were seen by the Spencers and others. They remained there until about noon of the following day, when they drove back to Elgin, and soon afterwards this prosecution was begun.

In the trial no direct evidence was offered of persuasion or invitation by defendant to go to the farm for an immoral purpose. There was no proof either of fornication or concubinage in the house or that any immoral purpose was accomplished. Mrs. Stotts did not complain of defendant's conduct nor did she testify in the case. It is true she went with him in his car openly, there was no concealment about going to the farm or the occupation of the house. What transpired in the house while they were there is not shown. It is true she went with defendant in his car and the state insists that defendant offered no evidence in denial of the charge made against him. The burden was on the state to present proof of the essential elements of the offense, which in this case was that he persuaded and procured her to go with him from Elgin to the farm for the specific immoral purpose of fornication or concubinage. In brief the charge was that he procured her to go with him to that house for the immoral purpose, and the verdict was that he was guilty.

It devolved upon the state to show the essential elements of the offense. Defendant demurred to the evidence at the end of the trial and, among other things, asked the court to instruct the jury to return a verdict of not guilty.

As stated, the defendant says there was no proof of persuasion and procurement by the defendant, and no evidence beyond the mere fact that she went with him in his car from Elgin to the farm. In the somewhat similar case of *State v. Speer*, 130 Kan. 226, 285 Pac. 639, it was said that there was no evidence that the defendant persuaded, induced or procured the woman to go with him from Anthony to a point in the country. There was evidence that the girl and another girl went in defendant's car with him and another, and that they returned about 12:30 at night. That defendant sat beside the Scott girl, that on the trip the Scott girl and defendant kissed each other, that no one got out of the car, and that no improper conduct occurred on the trip. It was said:

"Even if the immoral purpose be conceded, where is the evidence of persuading, inducing, enticing or procuring? It was held in *State v. Rieman* (118 Kan. 577, 235 Pac. 1050), *supra,* that 'the word procure means to bring about, effect, cause.' The defendant must be shown to have done or said something to bring about, effect or cause the girl to go with him on the trip. In a later case it was held:

" 'Where defendant was charged in a single count with persuading a female person to go from one place to another for the purpose of prostitution and concubinage, contrary to R. S. 21-937, the gist of the offense was that of getting her to go from one place to another for an immoral purpose.' (*State v. Clark,* 125 Kan. 791, syl. ¶ 1, 266 Pac. 37.)

"If the gist of this offense is that of getting Gussie Scott to go from one place to another for an immoral purpose, what did defendant say or do in getting her to go? There is nothing in the record before us that shows this very gist of the offense. On the contrary, all the evidence there is on the subject aside from the use of defendant's car is that the Scott girl did something toward getting the defendant to go—she telephoned him." (p. 227.)

The court was compelled to conclude that the evidence was insufficient to establish or prove the charge, and the judgment was reversed.

The important element that defendant persuaded and induced the woman to go on the trip for the immoral purpose was not directly shown, and while there may be something in the circumstances to arouse a suspicion that as they were alone in the house she must have been invited, and as they were alone in the house they had an opportunity for immorality, these facts were not shown.

Defendant entered a plea of not guilty. The presumption of innocence prevails until the contrary is shown by the state, and the trial ·court in effect instructed the jury that if they were convinced by the evidence that the woman was induced to go to the farm for the purpose of having sexual intercourse there, it would be fornication or concubinage, and that they should find him guilty, but if it was not for that purpose they should acquit him; and we might ask, as was done in *State v. Speer,* supra, where is the evidence of persuading, inducing or enticing her to go with him for that purpose? We can find no evidence that justifies a finding that he even invited her to go with him for such a purpose. It is not always easy to find proof of illicit sexual acts where the female does not testify. For some reason the state did not call her as a witness, although her evidence appears to have been available, and if she had testified the statute provides that no conviction shall be had on the uncorroborated testimony of the woman, but it has been said by the court:

"There could seldom be a conviction for any crime involving illicit sexual intimacy if corroborating eye-witnesses were indispensable. The statutory requirement of corroboration can readily be satisfied by evidentiary facts and circumstances, if they are of sufficient potency to satisfy the jury." (*State v. White,* 111 Kan. 196, 197, 206 Pac. 903.)

While there were some circumstances which might have served for corroboration, there was, we think, a lack of evidence to show the essential elements of the offense. Men and women, married and single, associate and ride, and are alone together, without thought of immorality or misconduct. The claim charged is a felony, for which defendant may be confined in the state penitentiary for as long as five years.

Some other of the offenses against immorality are declared to be misdemeanors, but the offense here involved was deemed to be so flagrant and heinous that it was characterized as a felony and is severely punished as such. So grave an offense with the severity of the penalty, in which the evidence of the victim must be corroborated before there can be a conviction, reqtires the holding that the essential elements of the offense must be proven before there can be a conviction. There is some complaint of the admission of testimony and of the instructions, but we find no material error in them.

Our view is that the demurrer should have been sustained, that the proof was insufficient to establish defendant's guilt, and therefore the judgment must be reversed and the cause remanded with directions that judgment be entered for defendant. It is so ordered.